IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CRIMINAL INFORMATION |
| v. | ) | |
| | ) | NO. 1:07-CR-231-CC |
| ERIN RIGGINS, | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED MOTION FOR DOWNWARD VARIANCE IN SENTENCE AND SENTENCING MEMORANDUM

COMES NOW, Erin Riggins, Defendant herein, by and through the undersigned counsel, and respectfully files this, his Amended Motion for Downward Variance in Sentence and Sentencing Memorandum[1], and hereby shows this honorable Court as follows:

## I. INTRODUCTION AND GROUNDS FOR REQUESTED SENTENCE

Defendant Erin Riggins now submits himself to this Court to be sentenced, fully acknowledging his guilt of the offense to which he voluntarily pled guilty. In sentencing

---

[1] Mr. Riggins initially filed a Motion for Downward Variance in Sentence and Sentencing Memorandum (hereinafter "initial Motion and Memorandum") on September 13, 2010. However, the initial Motion and Memorandum erroneously stated that Mr. Riggins had testified before the grand jury. This is not the case, although, upon information and belief, evidence provided by Mr. Riggins was presented to the grand jury. Furthermore, upon review of Mr. Riggins' Plea Agreement, it appears that Mr. Riggins agreed not to move for a downward departure. Mr. Riggins accordingly withdraws his request for a downward departure in this matter, but maintains his request for a variance pursuant to 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005), and a sentence of probation or home confinement.

1

Mr. Riggins, several critical facts should guide the Court's determination of a reasonable sentence, sufficient, but not greater than necessary, to account for the purposes in 18 U.S.C. § 3553(a), pursuant to the wide discretion conferred on the Court in the wake of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005). First, that Mr. Riggins was a minority partner in escripts.com whose duties were limited to managing Escripts' call center. Second, five physician co-defendants in this case have, with the Government's consent, received sentences of *probation* despite evidence that the physicians approved *hundreds* of prescriptions *in the matter of an hour or so* for patients whom they never saw. All but one of the physician co-conspirators are still licensed physicians today. Third, Mr. Riggins was the least culpable of the alleged organizer defendants and was the first defendant to come forward and cooperate with the Government, which subsequently prompted Troy Sobert to also cooperate with the Government. The Government has filed a motion for downward departure as a result of Mr. Riggins' substantial cooperation under U.S.S.G. § 5K1.1. The Government has always represented to Mr. Riggins and his counsel that Mr. Riggins was the least culpable between Stoufflet, Sobert and himself. Fourth, Mr. Riggins possesses exceptional responsibilities for a family member.[2] With these facts in mind, Mr. Riggins respectfully requests that this Court impose a sentence of probation or home confinement.

---

[2] Given the private nature of the circumstances relating to Mr. Riggins' family member, information relating to this individual will be submitted to the Court and the Government separately.

2

## A. Mr. Riggins' True "Role in the Offense"

In 2001, Christopher Stoufflet started an online or internet business called lifespanlongevity.com for the purpose of selling testosterone and human growth hormone via the internet. Presentence Investigation Report ("Presentence Report"), ¶ 12. Stoufflet and Troy Sobert were partners in lifespanlongevity.com ("Lifespan").

Mr. Riggins did not start Lifespan or escripts.com ("Escripts"), but became a partner of escripts.com ("Escripts") years later, only after a Federal Drug Administration ("FDA") agent reviewed Escripts' books and interviewed its employees. Stoufflet told Mr. Riggins that the Government had approved of Escripts' business model. He offered Mr. Riggins a minority ownership in the business.

Mr. Riggins' duties were limited to managing Escripts' call center. He was neither a physician nor a pharmacist. Mr. Riggins was not involved in the recruitment of physicians for the scheme, or in the marketing or selling human growth hormone.

## B. Sentencing Treatment of the Physician Co-Conspirators

The online or internet pharmacy model was developed in the early 2000s. The model depended on two licensed professionals to function—physicians and pharmacists.

The Presentence Report acknowledges that Stoufflet's, Sobert's and Mr. Riggins' business "employed at least fourteen physicians…" Presentence Report, ¶ 14. As the Government alleges in Mr. Riggins' Criminal Information:

> 16. It was further part of the conspiracy that coconspirators VLADIMIR ANDRIES, M.D., THU ANH HOANG, M.D., STEVEN DANIEL HOLLIS, M.D.,

AHSAN U. RASHID, M.D., and ANDRE D. SMITH, M.D., were physicians who authorized the distribution and dispensing of controlled substances, including Phentermine, Meridia, Bontril, and Adipex, to Internet customers. Co-conspirators VLADIMIR ANDRIES, M.D., THU ANH HOANG, M.D., STEVEN DANIEL HOLLIS, M.D., AHSAN U . RASHID, M.D., and ANDRE D. SMITH, M.D., had no face-to-face contact with these customers. The controlled substances were distributed and dispensed for other than a legitimate medical purpose and not in the usual course of professional practice.

Docket # 1, at ¶¶ 15, 16. Furthermore, as the Presentence Report states:

The physicians were expected to review [a customer's request for controlled substances] and make a medical determination regarding the validity of the request and, if legitimate, approve the prescription… The physicians' overall approval rate for prescription requests rarely (if ever) fell below 95% and remained consistently at or above 97%. During peak hours, the physicians were approving several hundred prescriptions.

Presentence Report, at ¶ 27. Upon information and belief, the physician co-conspirators were tried before a jury, however the jury could not reach a verdict. The Government proceeded to enter lenient plea and sentencing agreements with the physicians.

Mr. Riggins' Presentence Report expressly states that, from April 2002 through November 2003, Dr. Andre B. Smith "authorized his name to appear as the prescribing physician on *at least 124,941 prescriptions including Schedule III substances and Schedule IV substances.*" Presentence Report, ¶ 22 (emphasis added). The Government charged Dr. Smith in the action of *United States v. Smith*, Case # 1:08-cr-00337-CC (N.D.Ga. 2008), in a Criminal Information, Case # 1:08-cr-00337-CC, Docket # 1, with *one* count of causing prescription drugs that had been shipped in interstate commerce to become misbranded, in violation of 21 U.S.C. §§ 331(a), (a)(1) and (b)(1), and 18 U.S.C.

§ 2. 21 U.S.C. § 333 expressly provides that "[a]ny person who violates a provision of section 331… shall be imprisoned for not more than one year or fined not more than $1,000, or both." 21 U.S.C. § 333(a)(1).

On November 17, 2008, this Court entered a Judgment in a Criminal Case, Case # 1:08-cr-00337-CC, Docket # 6, finding Dr. Smith guilty of one count of distribution of misbranded prescription drugs, in violation of §§ 331(a), (a)(1) and (b)(1), and sentencing Dr. Smith to *three years' probation*, with a $25.00 special assessment and 150 hours of community service. On November 20, 2008, this Court entered an Order Amending Judgment, Case # 1:08-cr-00337-CC, Docket # 7, ordering Dr. Smith to participate in the "Home Confinement Detention Program for a period of 365 days…" Case # 1:08-cr-00337-CC, Docket # 7, p. 1. Dr. Smith is still listed as an actively licensed medical doctor by the Michigan Department of Community Health ("MDCH"), as shown by information from MDCH's website, attached hereto as Exhibit A.

Similarly, the Presentence Report acknowledges that, from August 2001 to August 2002, Dr. Steven D. Hollis "authorized his name to appear as the prescribing physician on at least 81,860 prescriptions including Schedule III substances and Schedule IV substances." Presentence Report, ¶ 20. On August 22, 2008, Dr. Hollis was also charged with one count of distribution of misbranded prescription drugs in violation §§ 331(a), (a)(1) and (b)(1) in *United States v. Hollis*, Case # 1:08-cr-00327-CC-1 (N.D.Ga. 2008), in a Criminal Information, Case # 1:08-cr-00327-CC, Docket # 1. On November 17,

2008, this Court entered a Judgment in a Criminal Case, Case # 1:08-cr-00327-CC, Docket # 8, sentencing Dr. Hollis to three years' probation. On November 20, 2008, this Court entered an Order Amending Judgment, Case # 1:08-cr-00327-CC, Docket # 7, ordering Dr. Hollis to participate in the "Home Confinement Detention Program" for one year.

The other physician co-conspirators, Dr. Vladimir Andries, Dr. Ahsan U. Rashid and Dr. Thu Anh Hoang are alleged by the Presentence Report to have authorized their names to 50,641, 38,558 and 32,300 prescriptions of controlled substances respectively. Presentence Report, ¶¶ 18, 19, 21. The physicians were charged by criminal information in the actions of *United States v. Andries*, Case # 1:08-cr-00096-CC (N.D.Ga. 2008), *United States v. Rashid*, Case # 1:08-cr-00336-CC (N.D.Ga. 2008), and *United States v. Hoang*, 1:08-cr-00094-CC (N.D.Ga. 2008) with distribution of misbranded prescription drugs. Dr. Andries was sentenced to three years' probation, with a $25.00 special assessment and 100 hours of community service, as shown by the Judgment in a Criminal Case, Case # 1:08-cr-00096-CC, Docket # 11. Dr. Rashid was sentenced to three years' probation, which was subsequently amended to one year home confinement, as shown by the Judgment in a Criminal Case, Case # 1:08-cr-00336-CC, Docket # 7, and an Order Amending Judgment, Case # 1:08-cr-00336-CC, Docket # 8. Dr. Hoang was sentenced to three years' probation, as shown by the Judgment in a Criminal Case, Case # 1:08-cr-00094-CC, Docket # 12. Drs. Andries, Rashid and Hoang are all listed as currently

licensed physicians in New York, California and Texas respectively, as demonstrated by the licensure information attached at Exhibit A.

## C. **Mr. Riggins' Assistance to the Government**

Prior to its Indictment, the Government entered into discussions with Stoufflet, Sobert and Mr. Riggins to resolve the case. The discussions broke down. However, Mr. Riggins wanted to assist the Government and give a proffer regarding Escripts', Stoufflet's, Sobert's and his own activities. Mr. Riggins furthermore did so over his counsel's written concerns regarding the terms of the proffer immunity by the Government.

Mr. Riggins' cooperation was the impetus for Sobert's subsequent cooperation with the Government. Furthermore, Mr. Riggins was required to pay $243,100 in restitution pursuant to his Plea Agreement. He paid restitution in full almost immediately upon entering into the Plea Agreement.

The Government has filed a motion for departure based upon substantial assistance pursuant to U.S.S.G. § 5K1.1.

## D. **Mr. Riggins' Recommended Sentence and Requested Sentence**

In contrast to the leniency and non-imprisonment sentences imposed in the cases of the co-conspirator physicians, the Presentence Investigation Report ("Presentence Report") calculates Mr. Riggins' base offense level under U.S.S.G. § 2X1.1 as 20. Presentence Report, ¶ 38. The Presentence Report proceeds to increase Mr. Riggins' offense level by one level for alleged conviction under 18 U.S.C. § 1957, pursuant to

U.S.S.G. § 2S1.1(b)(2)(A); and four levels for an aggravating role in the offense, pursuant to U.S.S.G. § 3B1.1(a). *Id*., ¶¶ 40, 42. It then reduces his offense level by three levels for acceptance of responsibility, pursuant to U.S.S.G. §§ 3E1.1(a), (b)(2), yielding a total offense level of 22. *Id*., ¶¶ 45, 46. The Presentence Report assigns Mr. Riggins a criminal history category of I. *Id*., ¶ 50. It recommends an advisory custody Guideline range of 46 to 57 months. *Id*., p. 24.

Irrespective of this recommended sentence, on the strength of Mr. Riggins' lack of culpability relative to the other organizer defendants, the lenient and favorable sentencing treatment given to physician co-defendants, and Mr. Riggins' assistance to the Government, this Court possesses abundant discretion and grounds to impose a sentence of probation on Mr. Riggins.

## II. <u>ARGUMENT AND CITATION OF AUTHORITIES</u>

### A. <u>A Probationary Sentence or Sentence of Home Confinement Is Authorized</u>

Pursuant to *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005), under the advisory Sentencing Guidelines, a sentencing court must consider the Guidelines, but must also consider the policies set forth in 18 U.S.C. § 3553(a), *id*., at 245-46 (internal citations omitted) (citing 18 U.S.C. § 3553(a)). *Booker* expressly held that a sentencing court may "sentence[ ] *within or outside the Guidelines range* in the exercise of his discretionary power under [18 U.S.C.] § 3553(a)…" *Id*. at 260 (emphasis added). § 3553(a) states that a "court shall impose a sentence sufficient, but not greater than

necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a).

Following *Booker*, the Eleventh Circuit Court of Appeals has expressly held that "district courts are obligated to impose a reasonable sentence, regardless of the Guidelines range, so long as the Guidelines have been considered." *United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006). "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." *United States v. Williams*, 456 F.3d 1353, 1363 (11th Cir. 2006). And "[a]fter the district court has accurately calculated the Guideline range, it 'may impose a more severe or more lenient sentence'…" *United States v. Winingear*, 422 F.3d 1241, 1244-45 (11th Cir. 2005) (quoting *United States v. Crawford*, 407 F.3d 1174, 1179 (11th Cir. 2005); citing *Booker*, 543 U.S. at 220). This Court therefore possesses discretion to vary downward from the recommended sentencing range in sentencing Mr. Riggins.

This Court also possesses authority to impose a sentence of probation or home confinement in Mr. Riggins' case. This is clear from *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586 (2007), in which the United States Supreme Court affirmed as reasonable a downward variance and sentence of 36 months probation for a former ecstasy distributor and drug user who netted $30,000 from his sales and whose recommended Guidelines range was 30 to 37 months, *id.*, at 59. "[While] custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are

9

nonetheless subject to several standard conditions that substantially restrict their liberty."
*Id.*, at 48 (quoting *United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587 (2001);
quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164 (1987)). Similarly, the
Court of Appeals has also affirmed probationary sentences as reasonable. *See United
States v. Jordan*, 582 F.3d 1239, 1251-52 (11th Cir. 2009) (*per curiam*) (upholding as
reasonable sentences of 6 months' probation imposed on defendants convicted of gaining
unlawful access to criminal records, whose recommended sentencing ranges were 27 to
33 months); *United States v. Anderson*, 267 Fed.Appx. 847, 850 (11th Cir. 2008) (*per
curiam*) (unpublished) (affirming a downward variance from a sentencing range of 18 to
24 months to a sentence of 3 years probation for defendant who pled guilty to insider
trading); *United States v. Deffes*, 874 F.2d 1501, 1501 (11th Cir. 1989) (*per curiam*)
(affirming suspended sentences and consecutive sentences of 5 years' probation for
defendant who pled guilty to bank fraud and possession of a firearm by a previously
convicted felon).

## B. The Unwarranted Sentencing Disparities Between Mr. Riggins and His Co-Conspirators Warrant a Downward Variance and a Probationary Sentence or Sentence of Home Confinement

18 U.S.C. § 3553 provides, in relevant part:

(a) Factors to be considered in imposing a sentence.—The court shall impose a
sentence sufficient, but not greater than necessary, to comply with the purposes set
forth in paragraph (2) of this subsection. The court, in determining the particular
sentence to be imposed, shall consider…
(6) the need to avoid unwarranted sentence disparities among defendants with
similar records who have been found guilty of similar conduct…

18 U.S.C. § 3553(a).

The lenient, non-incarceration sentences of probation and home confinement given to the physician co-conspirators in this case are unusual for physicians involved in online or internet pharmacy prosecutions. **The average sentence imposed on physicians in online pharmacy cases which the defense has been able to locate is approximately 25 months—two years'—incarceration.** Similar cases which Mr. Riggins counsel has been able to locate, and the outcome of these cases are set forth below. The information is based on counsel's research, as well as the Drug Enforcement Administration's publication "Cases Against Doctors" and the other materials attached as Exhibit B.

| Defendant Physician/ Case | Sentence |
|---|---|
| Akhil Bansal, M.D. *United States v. Bansal et al.,* Case # 2:05-cr-00193-PD (E.D.Pa. 2005) | 360 months' imprisonment, 5 years' supervised release |
| Porfirio Orta-Rosario, M.D. *United States v. Orta-Rosario,* Case # 3:07-cr-00154-RJC-DSC (W.D.N.C. 2007) | 60 months' imprisonment, 2 years' supervised release |
| Juan A. Ibanez, M.D. *United States v. Ibanez,* Case # 8:07-cr-00537-EAK-MAP (M.D.Fla. 2007) | 51 months' imprisonment, 3 years' supervised release |
| Ricky J. Nelson, M.D. *United States v. Nelson,* Case # 5:01-cr-00142-R (W.D.Ok. 2001) | 51 months' imprisonment, 2 years' supervised release |
| William F. McArthur, III, M.D. *United States v. McArthur,* Case # 2:07-cr-00062-AAA-JEG (S.D.Ga. 2007) | 46 months' imprisonment, 3 years' supervised release |
| Michael J. Millette, M.D. *United States v. Millette,* Case # 2:06-cr-01033-LRR (N.D.Iowa 2006) | 41 months' imprisonment, 2 years' supervised release |

| | |
|---|---|
| Daniel L. Thompson, M.D.<br>*United States v. Chhabra et al.,* Case # 1:03-cr-00530-LMB (E.D.Va. 2003) | 36 months' imprisonment, 3 years' supervised release |
| Christopher Tobin, M.D.<br>*United States v. LaCour et al.,* Case # 6:08-cr-00118-DDD-DAB (M.D.Fla. 2008) | 36 months' imprisonment, 3 years' supervised release |
| James A. Brinton, M.D.<br>*United States v. Brinton et al.,* Case # 2:08-cr-00671-DAK (D.Utah 2008) | 36 months' imprisonment, 3 years' supervised release |
| Thomas A. Hanny, M.D.<br>*United States v. Hanny,* Case # 2:06-cr-01032-LRR (N.D. Iowa 2006) | 33 months' imprisonment, 2 years' supervised release |
| Wilbur D. Hilst, M.D.<br>*United States v. Hilst et al.,* Case # 6:07-cr-10079-WEB (D.Kan 2007) | 33 months' imprisonment, 1 year supervised release |
| Mario A. Diaz, M.D.<br>*United States v. Diaz,* Case # 2:06-cr-01006-LRR (N.D. Iowa 2006) | 30 months' imprisonment, 2 years' supervised release |
| Akhil Baranwal, M.D.<br>*United States v. LaCour et al.,* Case # 6:08-cr-00118-DDD-DAB (M.D.Fla. 2008) | 27 months' imprisonment, 3 years' supervised release |
| Roselyn J. Rice, M.D.<br>*United States v. Rice,* Case # 2:07-cr-01018-LRR (N.D.Iowa 2007) | 26 months' imprisonment, 2 years' supervised release |
| David M. Baron, M.D.<br>*United States v. Baron,* Case # 0:07-cr-60245-WJZ (S.D.Fla. 2007) | 25 months' imprisonment |
| Robert Ogle, M.D.<br>*United States v. Fuchs et al.,* Case # 3:02-cr-00369-P (N.D.Tex. 2002) | 24 months' imprisonment, 3 years' supervised release |
| Peter C. Lopez, M.D.<br>*United States v. Lopez,* Case # 2:07-cr-01023-LRR (N.D.Iowa 2007) | 22 months' imprisonment, 2 years' supervised release |
| Edward T. Schwab, D.O.<br>*United States v. Schwab,* Case # 2:06-cr-01011-LRR (N.D. Iowa 2006) | 22 months' imprisonment, 2 years' supervised release |
| James E. Pickens, M.D.<br>*United States v. LaCour et al.,* Case # 6:08-cr-00118-DDD-DAB (M.D.Fla. 2008) | 21 months' imprisonment, 3 years' supervised release |

| | |
|---|---|
| Apryl M. McNeil, M.D. *United States v. McNeil,* Case # 2:05-cr-01023-LRR (N.D.Iowa 2005) | 20 months' imprisonment, 2 years' supervised release |
| Absylom K. Nyamekye, M.D. *United States v. Nyamekye,* Case # 2:05-cr-01022-LRR (N.D.Iowa 2005) | 20 months' imprisonment, 2 years' supervised release |
| David L. Hoblit, M.D.  *United States v. Hoblit,* Case # 4:09-cr-00180-MAC-ALM (E.D.Tex. 2009) | 18 months' imprisonment, 3 years' supervised release |
| Rene Guerra, M.D. *United States v. Guerra,* Case # 2:06-cr-01036-LRR (N.D.Iowa 2006) | 18 months' imprisonment, 2 years' supervised release |
| Alexis Roman-Torres, M.D. *United States v. Roman-Torres,* Case # 6:09-cr-00018-DDD-DAB (M.D.Fla. 2009) | 18 months' imprisonment, 3 years' supervised release |
| Philip Mach, M.D. *United States v. Mach,* Case # 0:05-cr-00282-MJD-JJG (D.Minn. 2005) | 15 months' imprisonment, 3 years' supervised release |
| Arturo Portales, M.D. *United States v. Chhabra et al.,* Case # 1:03-cr-00530-LMB (E.D.Va. 2003) | 12 months' and 1 day imprisonment, 2 years' supervised release |
| Torino Jennings, M.D. *United States v. Jennings,* Case # 1:09-cr-10160-RGS (D.Mass.) | 12 months' and 1 day imprisonment, 2 years' supervised release |
| Jose Crespin, M.D. *United States v. Crespin,* Case # 1:06-cr-20656-DLG (S.D.Fla. 2006) | 7 months' imprisonment, 2 years' supervised release |
| Jean C. Dominique, M.D.  *United States v. Dominique,* Case # 6:06-cr-00058-ACC-KRS (M.D.Fla. 2006) | 5 years' probation |
| Steven Klinman, M.D. *United States v. Bezonsky et al.,* Case # 2:06-cr-00394-RK (E.D.Pa. 2006) | 4 years' probation |
| Kenneth Speak, M.D. *United States v. Fuchs et al.,* Case # 3:02-cr-00369-P (N.D.Tex. 2002) | 4 years' probation |
| Margaret McIntosh-Fulmore, M.D. *United States v. LaCour et al.,* Case # 6:08-cr-00118-DDD-DAB (M.D.Fla. 2008) | 3 years' probation, 12 months' home confinement |
| Abel Lau, M.D. *United States v. LaCour et al.,* Case # 6:08-cr-00118-DDD-DAB (M.D.Fla. 2008) | 3 years' probation, 6 months' home detention |

| | |
|---|---|
| Carlos M. Barrera, M.D.<br>*United States v. Barrera,* Case # 9:05-cr-80196-KLR (S.D. Fla. 2005) | 3 years' probation |
| Marvin J. Brown, M.D.<br>*United States v. Brown,* Case # 1:03-cr-00579-LMB (E.D.Va. 2003) | 3 years' probation |
| **Vladimir Andries, M.D.**<br>***United States v. Andries,* Case # 1:08-cr-00096-CC (N.D.Ga. 2008)** | **3 years' probation** |
| **Thu Anh Hoang, M.D.**<br>***United States v. Hoang,* 1:08-cr-00094-CC (N.D.Ga. 2008)** | **3 years' probation** |
| **Steven D. Hollis, M.D.**<br>***United States v. Hollis,* Case # 1:08-cr-00327-CC-1 (N.D.Ga. 2008)** | **3 years' probation, changed to 1 year home detention** |
| **Ahsan U. Rashid, M.D.**<br>***United States v. Rashid,* Case # 1:08-cr-00336-CC (N.D.Ga. 2008)** | **3 years' probation, changed to 1 year home detention** |
| **Andre B. Smith, M.D.**<br>***United States v. Smith,* Case # 1:08-cr-00337-CC (N.D.Ga. 2008)** | **3 years' probation, changed to 1 year home detention** |
| Russell Johnson, M.D.<br>*United States v. Chhabra et al.,* Case # 1:03-cr-00530-LMB (E.D.Va. 2003) | 2 years' probation, 6 months' home confinement |
| Laurence Cockerille, M.D.<br>*United States v. Chhabra et al.,* Case # 1:03-cr-00530-LMB (E.D.Va. 2003) | 2 years' probation, 6 months' home confinement |
| Juan O. Gonzalez, M.D.<br>*United States v. Gonzalez,* Case # 2:06-cr-01007-LRR (N.D. Iowa 2006) | 2 years' probation |
| Megaly S. Bethencourt, M.D.<br>*United States v. Bethencourt,* Case # 2:05-cr-01009-LRR (N.D.Iowa 2005) | 2 years' probation |
| Tufan Senler, M.D.<br>*United States v. Senler,* Case # 3:09-cr-00035-JGH (W.D.Ky 2009) | 2 years' probation |

Even eliminating the first, 360 month, sentence, the average is still 16 months of imprisonment. The foregoing statistics make clear that the physician co-conspirators in

this case received sentences far below the typical sentence imposed on physicians in online or internet pharmacy cases. The physician co-conspirators were allowed to plead to one or two counts misbranding pursuant § 331—a misdemeanor. These physicians authorized *tens of thousands* of illegal prescriptions, amounting to hundreds per day. Unlike the average physician in an internet pharmacy case, the physician co-conspirators, except for Dr. Hollis, are currently still licensed physicians in their states of residence.

> One of the purposes of the Sentencing Commission, and by extension the Sentencing Guidelines, is to "establish sentencing policies and practices for the Federal criminal justice system that... provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct ...."

*United States v. Docampo*, 573 F.3d 1091, 1102 (11th Cir. 2009) (quoting 28 U.S.C. § 991(b)(1)(B); citing *United States v. Clark*, 434 F.3d 684, 687 (4th Cir. 2006)); *see also United States v. Smart*, 518 F.3d 800, 804 (10th Cir. 2008) ("After *Gall*, it is clear that codefendant disparity is not a *per se* 'improper' factor, such that its consideration would constitute procedural error") (affirming district court's downward variance of 48 months from the bottom of the recommended sentencing range in sentencing the defendant, who was convicted of inducing a minor to engage in sexually explicit conduct for the purpose of producing videotapes, based on sentencing disparities with the defendant's co-defendants pursuant to § 3553(a)(6)).

The Eleventh Circuit and Georgia federal courts have relied upon disparities in sentences between similarly situated offenders with similar records in sentencing

defendants to the low end, or below, the sentencing range recommended by the United States Sentencing Guidelines. For instance, in *United States v. Colbert*, 302 Fed.Appx. 886 (11th Cir. 2008) (*per curiam*; unpublished), the defendant, who was convicted with conspiracy with intent to distribute cocaine and money laundering, argued that his co-conspirators, including the head of the conspiracy, received substantially lower sentences, and the Eleventh Circuit held that the district court did not abuse its discretion in sentencing the defendant where "[t]he court expressly chose a sentence at the low end of the guidelines range to avoid unwarranted sentencing disparities," *id*. at 889. Similarly, the defendant in *United States v. Lamonds*, 291 Fed.Appx. 314, (11th Cir. 2008) (*per curiam*; unpublished) was convicted of conspiracy to distribute or possess with intent to distribute cocaine and the Court of Appeals affirmed his sentence, observing that "the district court considered [the defendant's] arguments regarding the sentencing disparity with his co-conspirator and his limited participation in the offense, and then varied downward 120 months from the low end of the guideline range because of those factors," *id*., at 317. Furthermore in *United States v. Pressley*, 473 F.Supp.2d 1303 (N.D.Ga. 2006) (Order) this Court considered disparities between defendants convicted of continuing criminal enterprise and drug trafficking in order to impose a downward variance from 27 years to 16 years, holding that "the Court can properly evaluate the disparity factor under a reasonableness analysis, it deems a 27 1/2 year sentence for a Category I offender to be

out of kilter with the substantially reduced sentences awarded to his co-defendants, who had far worse criminal records," *id*. at 1317.

The disparities between the lenient sentences imposed on the physician co-defendants and the recommended sentence of years of incarceration for Mr. Riggins should be considered by this Court and weighed heavily in favor of a downward variance and imposition of a sentence of probation or home confinement in Mr. Riggins' case, pursuant to § 3553(a)(6). The evidence in this case clearly showed that the physician co-conspirators approved hundreds of prescriptions an hour, and yet none of the physicians are currently incarcerated, and all but one are currently still licensed.

## C. The Remaining Purposes Under 18 U.S.C. § 3553(a) Warrant a Downward Variance and a Probationary Sentence or Sentence of Home Confinement

Mr. Riggins readily acknowledges that the offense which he has pled guilty to is a serious one. He further acknowledges that he has a State drug conviction on his record, based on conduct which occurred several years after the investigation in this case began. Presentence Report, ¶ 30. However, Mr. Riggins' lack of criminal record prior to the conduct in this case, combined with his unusual family responsibilities, weigh in favor of a downward variance and a sentence of probation or home confinement, pursuant to 18 U.S.C. § 3553(a)(1).

While the offense was serious, and Mr. Riggins in no way attempts to minimize his responsibility, it is important to consider the circumstances of Mr. Riggins' involvement in the offense. The Government has informed Mr. Riggins' counsel of its belief that Mr.

17

Riggins possessed the "least culpable" role of the organizer defendants. Stoufflet and Sobert started Lifespan and were responsible for recruiting physicians and pharmacists for the scheme. In contrast, Stoufflet offered Mr. Riggins a minority share in Escripts after telling him that the Government had approved of Escripts' business model, and after an FDA agent had inspected the company's books and interviewed its employees. After becoming a minority owner, Mr. Riggins' responsibilities were limited to the call center.

Mr. Riggins' substantial assistance to the Government must also kept in mind, although it forms the basis for the motion for downward departure pursuant to U.S.S.G. § 5K1.1. Mr. Riggins was the first defendant to offer his cooperation to the Government without any guarantee by the Government, over his counsel's written concerns. His cooperation was the catalyst which caused Sobert to later agree to cooperate with the Government. Mr. Riggins voluntarily and ureservedly provided the Government with information to assist its case in his proffer.

The underlying conduct as a whole is a serious matter, yet Mr. Riggins' relative involvement and assistance to the Government urges a lesser sentence, in particular a sentence of probation, pursuant to 18 U.S.C. § 3553(a)(2)(A), especially in view of the lenient treatment of the physician co-conspirators for their serious conduct. In view of his role in the offense, a sentence of probation or home confinement of term, and under such conditions, deemed appropriate by the Court would constitute just punishment for his

conduct. Such a sentence would also be sufficient to promote respect for the law in Mr. Riggins, pursuant to § 3553(a)(2)(A).

Conversely, a sentence of imprisonment is not necessary to deter others from similar criminal conduct, under 18 U.S.C. § 3553(a)(2)(B). As the information in the preceding section demonstrates, online or internet pharmaceutical schemes have been attempted, stopped and prosecuted by the Government. It can be assumed to be obvious to all but the most unintelligent criminals that such business arrangements are illegal, and will likely be shut down with most participants being prosecuted. This is suggested by the fact that Mr. Riggins' and his counsel's research reveals that only two out of 45 prosecutions of physicians were initiated in 2009, and none thus far in 2010.

There is also no need of a sentence of imprisonment to protect the public from any further alleged crimes by Mr. Riggins, under 18 U.S.C. § 3553(a)(2)(B). Mr. Riggins is over 50 years old, and the likelihood of any recidivism is exceedingly slight.

A non-imprisonment, probationary sentence *is*, however, necessary for Mr. Riggins to continue to provide care and support for others, pursuant to 18 U.S.C. § 3553(a)(2)(D). Furthermore, as set forth above, a sentence of probation or home confinement is among the kinds of sentence available to the Court which this Court is fully authorized to impose, under 18 U.S.C. § 3553(a)(6). Under 18 U.S.C. § 3553(a)(7), Mr. Riggins promptly paid $243,100 in restitution after entering into his plea agreement with the Government. And finally, as set forth at length in the preceding section, the disparities

between the sentence recommended for Mr. Riggins and the sentences actually imposed on the physician co-defendants weighs heavily in favor of a variance in sentence and the imposition of a sentence of probation or home confinement.

Accordingly, the majority of the sentencing purposes under § 3553(a) urge a downward variance in sentence and the imposition of a sentence of probation or home confinement in Mr. Riggins' case.

### III. CONCLUSION

WHEREFORE, for the reasons set forth herein, this Court should vary downward from the advisory Guideline range in sentencing Mr. Riggins and impose a sentence of probation or home confinement, under such conditions as this Court may deem appropriate.

Respectfully submitted, this 15th day of September, 2010.

s/Craig A. Gillen
Craig A. Gillen, Esq.
Georgia Bar No. 294838
GILLEN WITHERS & LAKE, LLC
One Securities Centre, Suite 1050
3490 Piedmont Road, N.E.
Atlanta, Georgia 30305
Telephone:   (404) 842-9700
Facsimile:    (404) 842-9750
E-mail:        cgillen@gwllawfirm.com

Counsel for Mr. Erin Riggins

## CERTIFICATION UNDER LOCAL RULE 7.1(D)

Pursuant to Local Rule 7.1(D), the undersigned hereby certifies that the foregoing filing is a computer-generated document, prepared in Times New Roman, 14-point font, in accordance with Local Rule 5.1(B).

**s/Craig A. Gillen**
Craig A. Gillen, Esq.
Georgia Bar No. 294838
GILLEN WITHERS & LAKE, LLC
One Securities Centre, Suite 1050
3490 Piedmont Road, N.E.
Atlanta, Georgia 30305
Telephone:   (404) 842-9700
Facsimile:   (404) 842-9750
E-mail:       cgillen@gwllawfirm.com

Counsel for Mr. Erin Riggins

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 15th day of September, 2010, the undersigned electronically filed the foregoing Defendant's Amended Motion for Downward Variance in Sentence and Sentencing Memorandum, using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

**Randy Scott Chartash**
**Assistant United States Attorney**
**United States Attorney's Office for the Northern District of Georgia**
randy.chartash@usdoj.gov

s/Craig A. Gillen
Craig A. Gillen, Esq.
Georgia Bar No. 294838
GILLEN WITHERS & LAKE, LLC
One Securities Centre, Suite 1050
3490 Piedmont Road, N.E.
Atlanta, Georgia 30305
Telephone:    (404) 842-9700
Facsimile:    (404) 842-9750
E-mail:       cgillen@gwllawfirm.com

Counsel for Mr. Erin Riggins